[No. A047884. First Dist., Div. Three. Sept. 24, 1990.]

In re KEMONTE H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KEMONTE H., Defendant and Appellant.

**COUNSEL**

Jean K. Yamasaki for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—Supplemental and subsequent petitions were filed pursuant to Welfare and Institutions Code sections 777 and 602, alleging that appellant Kemonte H. possessed marijuana for sale in violation of Health and Safety Code section 11359. It was stipulated by the parties in the court below that if it was found that Kemonte possessed marijuana, it was possessed for sale. Following the denial of Kemonte's motion to suppress evidence, the court found the allegations of the petitions to be true. At the dispositional hearing, Kemonte was committed to the custody of a probation officer to be placed in a foster home or other facility.

I

Oakland Police Officers Ronald Lighten and Demetrios Lozares were in uniform and driving a police car eastbound on Rudsdale, at approximately

5:40 p.m., when they received a radio dispatch that a citizen reported drug activity in progress in the vicinity of 7000 Rudsdale. At the corner of 71st Avenue and Rudsdale they saw Kemonte with two others. Kemonte was leaning into a car which had stopped southbound on 71st Avenue. His elbows and his hands were in the passenger compartment. The other two persons were standing on the sidewalk nearby.

Officer Lighten, a 10-year veteran of the Oakland Police Department, testified at the suppression hearing that in the last year he had made 35 to 50 narcotics-related arrests. At least 20 to 25 of those arrests were for marijuana possession and at least half of those involved someone leaning into a car. The officer described a typical scenario of a drug transaction wherein the seller stands on the street and flags down a passing car to indicate he or she has narcotics for sale. The fact Kemonte was leaning into the car was consistent with Officer Lighten's experience of how a drug sale takes place.

The 2 officers had been driving at 10 to 15 miles per hour. They pulled the car over, stopped the car approximately 15 to 20 feet away from Kemonte and walked toward him at a "semi-quick" pace. Officer Lighten noticed Kemonte look in his direction when he got out of the police car. When the officer was about 10 to 15 feet away from Kemonte, he observed Kemonte turn to his right and drop a brown paper bag from his right hand. Kemonte then turned and began to run. Officer Lighten had said nothing to Kemonte until this point.

After Kemonte began to flee, Officer Lighten told him to stop. Officer Lozares seized Kemonte as he was close enough to him at that time. Officer Lighten then picked up the brown paper bag and found what appeared to be seven baggies of marijuana. Kemonte was arrested for possession of marijuana for sale.

## II

Appellant challenges the denial of his suppression motion on the ground that the officers illegally detained him when they pulled over and approached him. He submits that the officers had insufficient cause for a detention and therefore his abandonment of the marijuana was a direct result of the illegal detention. We have determined that the officers' conduct did not, prior to Kemonte dropping the paper bag, constitute a detention under the Fourth Amendment and the abandonment of the contraband was voluntary.

██ In reviewing a motion to suppress, we defer to the trial court's factual findings which are supported by substantial evidence and

independently determine whether the facts as found by the trier are supported by the constitutional standard of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) The facts in the instant case are undisputed. We therefore independently review the decision, applying federal law, as well as state law where it does not conflict with the federal law, to evaluate the issues. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *McGriff* (1990) 217 Cal.App.3d 1140, 1143 [266 Cal.Rptr. 429].)

■ The pertinent inquiry here is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554, fn. omitted [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) This test was adopted by a majority of the court in *INS* v. *Delgado* (1984) 466 U.S. 210, 215 [80 L.Ed.2d 247, 254-255, 104 S.Ct. 1758]. The test attempts to assess the coercive effect of police conduct, taken as a whole and not the details of the conduct in isolation. What constitutes a restraint on liberty will vary with the particular police conduct and with the setting in which the conduct occurs. (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 571-572, 108 S.Ct. 1975].) The Fourth Amendment has not been violated where an officer approaches an individual on a public street. (*Florida* v. *Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 235-236, 103 S.Ct. 1319].) In *Mendenhall*, the high court held no seizure occurred where ununiformed federal agents approached an individual in the public concourse of an airport, identified themselves, and asked to see her identification and ticket. (*United States* v. *Mendenhall, supra*, 446 U.S. at pp. 547-548, 555 [64 L.Ed.2d at pp. 504-505].)

Also, in *Chesternut* no seizure had taken place where police officers on routine patrol observed a man get out of a car which had just pulled over at an intersection. The man then walked over to another man who was standing alone on the corner. Upon seeing the patrol car, the man standing on the corner, Chesternut, turned and ran. The officers followed him in the patrol car, driving alongside him. While the officers were driving beside the man, they observed him drop some packets from his right-hand pocket. He was arrested for narcotics possession. (*Michigan* v. *Chesternut, supra*, 486 U.S. at p. 569 [100 L.Ed.2d at p. 569].) The high court concluded "that the police conduct in this case did not amount to a seizure, for it would not have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." (*Ibid.*)

■ The police officers' conduct in the instant case would not have communicated to a reasonable person that he or she was not free to leave. After observing Kemonte leaning into a car, the officers pulled the police

car over to the curb and quickly walked toward him. They were still 15 to 20 feet away from Kemonte when they started to approach him. The officers did not summon Kemonte over to them. Neither did they order him to stop. In fact, the officers said nothing to Kemonte at all before he dropped the marijuana and began to run. Prior to his abandoning the bag, the officers were clearly not close enough to Kemonte to be able to physically restrain him. Nothing about the officers' conduct represented a show of authority signifying that Kemonte was restrained. A seizure within the context of the Fourth Amendment had not occurred before Kemonte dropped the bag.

■ Kemonte argues that Officer Lighten's subjective intention to detain him was evident and that, as a reasonable 13-year-old, he believed the officers were about to restrain him. In the first instance, Officer Lighten's subjective intention is irrelevant to our objective analysis of whether a detention has occurred under the Fourth Amendment, unless his overt action communicates that state of mind. (*People* v. *Franklin* (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840].) Nothing in the record here indicates that the officer's subjective intent was reflected in his actions.

Moreover, it is apparent that in this case Kemonte's abandonment and flight were the result of his own guilty state of mind. Kemonte's asserted "reasonable" belief that he was detained seems to be based on his knowledge of the contents of the brown paper bag. However, the question of whether an illegal detention has occurred is determined by the reasonable belief of an innocent citizen. (See *People* v. *Holloway* (1985) 176 Cal.App.3d 150, 156 [221 Cal.Rptr. 394].) A reasonable person of Kemonte's age would not have felt restrained by two police officers approaching him on a public street. From the officers' conduct in the instant case, a reasonable person could only conclude that the officers wanted to talk to him. No detention occurred.

■ Neither do the protections under the Fourth Amendment come into play where the average citizen feels he *should* remain. The *Mendenhall* standard requires courts to analyze only whether the reasonable person feels he or she does not have the right to leave.

Officers may investigate activities taking place on a public street by making a reasonable inquiry of the participants without it being a detention. Cooperative citizens may ordinarily feel they should respond when approached by an officer on the street but this does not, by itself, mean that they do not have a right to leave if they so desire.

Finally, the instant case is readily distinguishable from *People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1126-1127 [236 Cal.Rptr. 840], which

held that contraband abandoned by the defendant following a chase unsupported by reasonable suspicion was the fruit of an illegal detention and must be suppressed. The *Washington* court analyzed that "[g]iving chase after an individual in a manner designed to overtake and detain or encourage the individual to give up his flight is a detention . . . ." (*Id.*, at p. 1126.) In *Washington*, two officers approached a group of men huddled in a courtyard area between two buildings. The group dispersed and the two officers followed the defendant who was walking away very quickly. They followed him through the lobby of a building and for a quarter block when one officer called out to the defendant. He replied: "Who me?" When the officer answered "Yes," defendant began to run. The officers gave chase. After two minutes of this chase, the defendant dropped the contraband. (*Id.*, at pp. 1122-1123.)

In the case at bench, Kemonte did not discard the bag of marijuana as a consequence of or during a chase. He dropped the bag as the officers were approaching him when the officers' conduct would not have led a reasonable person to believe he was going to be detained.

The dispositional order is affirmed.

White, P. J., and Strankman, J., concurred.