[No. B078258. Second Dist. Div. Two. June 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DERRICK GREEN, Defendant and Appellant.

COUNSEL

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GATES, J.**—Derrick Green, also known as Steven Wade, appeals from the judgment entered following a negotiated plea of guilty to possession for sale of a controlled substance (Health & Saf. Code, § 11351) and an admission to having served a prior term of imprisonment within the meaning of Penal Code section 667.5, subdivision (b). He contends: "The trial court committed reversible error in denying appellant's motion to suppress the evidence found underneath the car in which he was a passenger."

The uncontradicted evidence established that during the execution of a search warrant on September 3, 1992, Deputy Sheriff Russell Bailey, a highly experienced narcotics officer, found cocaine, firearms, a gram scale and a brown paper bag filled with numerous baggies in the home of one Adrian Lathan, a probationer who admitted he sold cocaine from his residence.

Subsequently, as part of an ongoing investigation, the deputy placed Lathan's house under surveillance on February 3, 1993. While he watched the residence, a Cadillac pulled up and appellant, Lathan and the driver got out. The three of them rushed into Lathan's home after initially hesitating in front of the house and "looking side to side in a hurried manner." Lathan was carrying a brown paper bag.

About 10 minutes later, the driver departed. Shortly thereafter, a fourth man arrived, "looking around in a hurried manner" as he hastened to the front door. He also was carrying a brown bag when he entered and an even larger one when he left.

The driver returned and went into the house for five to ten minutes before exiting with Lathan and appellant. This time appellant had a brown paper bag in his hand. The driver and appellant got into the car and left.

Deputy Bailey immediately radioed assisting narcotics units that the Cadillac was leaving Lathan's residence and indicated he wanted the vehicle stopped, a "narcotics investigation" conducted and the persons inside identified.

Deputy Sheriff Stephen Underdown and his partner were assigned to follow the Cadillac. They activated their lights and the driver moved toward the right-hand curb as if he were about to stop. However, he then accelerated and attempted to elude the deputies. His efforts were thwarted when he crashed into a stucco wall one and one-half miles into the pursuit. He fled

and was never apprehended or identified. Appellant, who remained in the vehicle, opened the passenger door and threw a handgun and brown paper bag underneath the car. After retrieving these items, the deputies discovered the discarded bag contained approximately four ounces of cocaine.

■ Oddly, the Attorney General joins appellant in discussing the propriety of the officers' signal to appellant to halt even though such factor no longer is relevant regarding the admissibility of property abandoned prior to its possessor's seizure. This point was settled by our nation's highest court in *California* v. *Hodari D.* (1991) 499 U.S. 621 [113 L.Ed.2d 690, 111 S.Ct. 1547], a decision made binding upon the courts of this state by the passage of Proposition 8 in 1982. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) *Hodari D.* reversed a decision by a California Court of Appeal that had held evidence discarded by a person who fled and then discarded contraband when pursued by the police was subject to suppression. In so doing the Supreme Court stated:

"As this case comes to us, the only issue presented is whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment. If so, respondent argues, the drugs were the fruit of that seizure and the evidence concerning them was properly excluded. If not, the drugs were abandoned by Hodari and lawfully recovered by the police, and the evidence should have been admitted. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . The present case . . . does not involve the application of any physical force; Hodari was untouched by Officer Pertoso at the time he discarded the cocaine. His defense relies instead upon the proposition that a seizure occurs 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen.' (*Terry* v. *Ohio,* 392 U.S. 1, 19, n. 16 (1968) (emphasis added) [20 L.Ed.2d 889, 905, 88 S.Ct. 1868]. Hodari contends (and we accept as true for purposes of this decision) that Pertoso's pursuit qualified as a 'show of authority' calling upon Hodari to halt. The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest, as respondent urges. Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few

of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed. Since policemen do not command 'Stop!' expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures." (*California* v. *Hodari D.*, *supra*, 499 U.S. at pp. 623-627 [113 L.Ed.2d at pp. 695-698], fns. omitted.)

Of course, even under the former rule appellant's contention would have been meritless. That is, even assuming this was not an instance where the police were merely seeking the cooperation of a citizen, a contact that does not require probable cause, it is manifest the uncontroverted facts of the instant case provided reasonable grounds at least to detain appellant given Deputy Bailey's expertise in the field of drug trafficking, the furtive actions he witnessed and his knowledge that Lathan was selling drugs from his residence. (See *People* v. *Limon* (1993) 17 Cal.App.4th 524, 528-534 [21 Cal.Rptr.2d 397].)

Appellant suggests that under Deputy Bailey's "reasoning, anyone who has ever left a friend's house carrying a bag of cookies, cassette tapes, Tupperware, or Amway vitamins would be fair game for police detention if, unknown to him, the friend's teenage son occasionally dealt in drugs." Quite apart from the unlikelihood that a person transporting such items would behave in the manner appellant did, the mere fact that there might have been an innocent explanation for the activities observed by the deputy would not render appellant's detention unreasonable.

As explained in *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957], ". . . if the circumstances are 'consistent with criminal activity,' they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' [Citation.] No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity,' as may often be the case. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. *Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'* [Citation.]" (Italics added; see also our own earlier decision in *People* v. *Holloway* (1985) 176 Cal.App.3d 150, 155-156 [221 Cal.Rptr. 394] and cases cited therein.)

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.