Filed 1/28/15  P. v. Summage CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>SYLVESTER MACK SUMMAGE, JR.,<br><br>    Defendant and Appellant. | F067237<br><br>(Super. Ct. No. BF140863A)<br><br><br>**OPINION** |

---

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

JuNelle Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Larenda R. Delaini and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*Before Cornell, Acting P.J., Gomes, J. and Peña, J.

## INTRODUCTION

Following denial of his motion to suppress evidence, defendant Sylvester Mack Summage, Jr., pled no contest to possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted serving a prior prison term (Pen. Code,[1] § 667.5, subd. (b)). He was sentenced to a total of four years in state prison.

On appeal, defendant asserts the trial court erred in denying his motion to suppress evidence because the detention was unlawful. Hence, he argues the fruits of that detention should have been excluded. Defendant also asks this court to independently review the materials disclosed in camera pursuant to his motion made under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to ensure all materials subject to disclosure were in fact provided to the defense. We reverse, finding his motion to suppress should have been granted.

## BRIEF FACTUAL[2] & PROCEDURAL BACKGROUND

On February 22, 2012, about 10:30 p.m., Bakersfield police officer Jason Mears and his partner were patrolling in the 1500 block of Palm Drive. The officers noticed two individuals walking in the middle of the roadway. Defendant was identified as one of the two individuals. Mears stated that once defendant saw the officers, he "split apart" from the other individual and began to walk away. The officer testified he attempted to "make contact" with defendant, who then "reached into his sweatshirt" and "threw his arms away, tossing an object." Mears testified he tried to make contact with defendant because walking in the middle of the roadway is a violation of Vehicle Code section 21956, subdivision (a).[3]

---

[1]Further statutory references are to the Penal Code unless indicated otherwise.

[2]The facts are taken from the testimony given at the hearing on defendant's motion to suppress.

[3]That section provides as follows: "No pedestrian may walk upon any roadway outside of a business or residence district otherwise than close to his or her left-hand edge of the roadway."

The object defendant tossed away was a plastic bag the officer believed contained narcotics and, more specifically, methamphetamine. It landed about five feet from defendant on top of a green waste can. Mears seized the bag of suspected narcotics, arrested defendant, and performed a search incident to arrest. On that occasion, the officer located a small black plastic bag containing more methamphetamine in defendant's right front coin pocket.

On cross-examination, Mears indicated there were no sidewalks in this area of Palm Drive, and the patrol car was the only traffic in the area at the time. Mears made a traffic enforcement stop, stepping out of his patrol car. Defendant continued walking. The officer thereafter told defendant "to stop and remove his hands from his pockets." The officer so directed because defendant was in violation of Vehicle Code section 21956, subdivision (a). After telling defendant to stop and remove his hands, defendant did so, throwing something from his pocket.

On redirect, Officer Mears testified defendant was "walking southbound in the middle of the roadway" or "dead smack in the middle of the roadway."

No other witnesses were called, and the court entertained argument from both parties. Defense counsel argued Mears had no probable cause to detain or arrest defendant because walking in the street in a residential area does not amount to a violation of Vehicle Code section 21956, subdivision (a) pursuant to *People v. Cox* (2008) 168 Cal.App.4th 702. Further, counsel argued that, absent the illegal detention, the narcotics would not have been found and should therefore be suppressed. After abandoning their argument that Vehicle Code section 21956, subdivision (a) did provide Officer Mears with authority for the stop, the People argued that by throwing the narcotics away as he raised his hands, defendant's action amounted to an intervening circumstance that cured the taint of the illegal detention, if detention had occurred at that point. And, when defendant abandoned the property, the officer "had every right to search" that property, leading "to the probable cause to search the defendant."

The trial court then ruled as follows:

3.

"All right. As far as the stated reason for the stop, that would not permit said stop. I think we're all in agreement now. I think the officer agrees with that.

"Now that we've read this case—I know I wasn't familiar with it, and Mr. [Prosecutor], neither were you. However, I'm not sure … either that the evidence would support a stop under [Vehicle Code section] 21954(a).

"I'm going to find that even though the initial saying of the word or order of stop was not supported by the evidence,[4] that the defendant abandoned property and threw it, and that intervening act took away taint of an illegal detention. Once the officer then saw an item tossed by the defendant that he thought was methamphetamine or suspected to be methamphetamine, he had a right to. [¶] The motion is denied."

## DISCUSSION

### The Motion to Suppress Evidence

Defendant contends the trial court erred in denying his motion to suppress evidence because all of the evidence seized was the result of an unlawful detention. Plaintiff disagrees.

> "In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply the rule to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the trial court's resolution of the factual inquiry under the deferential substantial evidence standard. [Citation.] Selection of the applicable law is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 284.)

### A.     The Reason for the Stop

Officer Mears testified he believed defendant had violated Vehicle Code section 21956, subdivision (a) by walking in the middle of the roadway, and this was the basis for contacting defendant. However, because defendant was walking in a residential area, he had not violated that section. (*People v. Cox*, *supra*, 168 Cal.App.4th at pp. 708-709 [Veh. Code, § 21956, subd. (a) "only restricts pedestrians from walking on roadways

---

[4]On cross-examination, Mears testified he "told" defendant to "stop."

4.

outside of business or residential districts"].) The trial court agreed: "As far as the stated reason for the stop, that would not permit said stop. I think we're all in agreement now." Hence, Officers Mears did not have reasonable cause to detain defendant. Plaintiff does not argue otherwise.

### B. Defendant Was Detained

Defendant maintains he was unlawfully seized before the plastic bag was discarded because Officer Mears "made a show of authority" by exiting his patrol car and ordering defendant to stop and remove his hands from his pockets. Defendant immediately submitted to Mears's show of authority. He did not attempt to flee. More specifically, defendant alleges the "unlawful seizure was effective when [he] complied with Officer Mears' orders that he stop and take his hands out of his pockets, which occurred before the plastic bag was discarded." Plaintiff argues "there [was] not a scintilla of evidence supporting" defendant's claim that he was unlawfully seized at the time he discarded the plastic bag.

A detention within the meaning of the Fourth Amendment occurs when, in view of all of the surrounding circumstances, a reasonable person would believe that he or she was not free to leave. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790.)

> "[W]hen an officer 'commands' a citizen to stop, this constitutes a detention because the citizen is no longer free to leave. (See *People v. Bower* (1979) 24 Cal.3d 638.) In *Bower*, as appellant proceeded through a passageway, a police officer ordered him to stop and turn around. (*Id.*, at p. 643.) The *Bower* court concluded the officer's directive to stop constituted a detention because it clearly 'restrain[ed] his freedom to walk away.' (*Ibid.*)" (*People v. Verin* (1990) 220 Cal.App.3d 551, 556, fn. omitted.)

The United States Supreme Court clarified in *California v. Hodari D.* (1991) 499 U.S. 621, 627-628, that even where an officer attempts to effect a seizure by a show of authority, if the targeted individual does not submit to that authority, no seizure has occurred.

5.

Here, we find Mears intended to detain defendant when he directed defendant to stop and to remove his hands from his pockets. Further, we find defendant submitted to Mears's authority by complying with Mears's command that he "stop" and "remove his hands from his pockets." Mears's directive to "stop" restrained defendant's freedom to walk away.

Plaintiff cites to a number of authorities in support of her assertion there was no detention. Nevertheless, those cases are factually distinguishable. In the majority of those cases, the defendant fled from the law enforcement officer. (*California v. Hodari D.*, *supra*, 499 U.S. at pp. 622-626 [juveniles fled at approach of unmarked police car, suspect tossed away rock cocaine while being pursued]; *Michigan v. Chesternut* (1988) 486 U.S. 567, 569-570 [defendant saw patrol car nearing the area then "turned and began to run"; officers observed him discard packets as they drove alongside him]; *People v. Green* (1994) 25 Cal.App.4th 1107, 1109-1110 [during narcotics investigation, defendant observed carrying brown bag into and out of a residence known for drug activity; when patrol officers activated their lights, driver of car in which defendant was a passenger "accelerated and attempted to elude the deputies." When vehicle crashed, defendant threw a handgun and the brown bag containing cocaine underneath car]; see *In re Kemonte H*. (1990) 223 Cal.App.3d 1507, 1510 [defendant saw police nearing, dropped brown paper bag, turned and fled; the officer had "said nothing" to defendant at that point]; *People v. Nickleberry* (1990) 221 Cal.App.3d 63, 66-67 [defendant made eye contact with gang intelligence officer in unmarked vehicle wearing police raid jacket, put hands in pockets, then took off running. The officer had not done or said anything to defendant at that point. As defendant ran, he dropped rock cocaine to the ground; he continued to run, eventually stopping when ordered to do so].) In this case, unlike the foregoing cases, defendant did not flee or attempt to flee in response to either Mears's presence or his command to stop.

The one case cited by plaintiff that did not involve a fleeing suspect is also factually distinguishable. In *In re Christopher B*. (1990) 219 Cal.App.3d 455, street gang

6.

task force officers approached a group of 20 to 25 suspected gang members in a public park. The group members began to walk away. Although not singled out in any way by the officers, Christopher lagged behind the other members of the group, then looked around, pulled an item from his waistband, and tossed it to the ground. That item contained 14 "rocks" of cocaine base. (*Id*. at pp. 458-459.) Unlike *Christopher B.*, defendant here was singled out by Mears and was ordered to stop and remove his hands from his pockets.

A review of the testimony given at the hearing on the motion to suppress reveals Officer Mears and his partner observed two men walking in the roadway. When those men saw the officers, they separated from one another. When Mears stepped out of his patrol car, defendant continued walking. The officer then directed defendant "to stop and remove his hands from his pockets." As defendant removed his hands from his pockets, he threw something away. Here then, Mears effected a seizure by a show of authority, and defendant immediately responded by submitting to that authority.

### C. The Fruit of the Poisonous Tree

Having concluded the initial detention was unlawful, we turn to an analysis of whether the evidence obtained should be suppressed as fruit of the poisonous tree. (See *Wong Sun v. United States* (1963) 371 U.S. 471, 484-488.)

> "Broadly speaking, evidence may be excluded as 'fruit of the poisonous tree' where its discovery 'results from' or is 'caused' by a Fourth Amendment violation. [Citation.] Exclusion is not required, however, where the evidentiary 'fruit' is derived from a source that is independent of the 'poisonous' conduct or where '"the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'"' [Citation.] The 'fruit of the poisonous tree' theory contemplates evidence being discovered along a causal 'time line' or 'road,' beginning at the 'poison' of a Fourth Amendment violation, and ending at the 'fruit' of newly discovered information, witnesses, or physical evidence. [Citation.] When the time line becomes too attenuated, or the causal 'road' is blocked by an intervening, independent act, the 'poison' is declared purged and its evidentiary 'fruit,' is admissible." (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1262.)

7.

Factors relevant to an attenuation analysis "include the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct." (*People v. Boyer* (2006) 38 Cal.4th 412, 448; see *Brown v. Illinois* (1975) 422 U.S. 590, 603-604.)

The temporal proximity of defendant's illegal detention to his tossing the object as he removed his hands from his pockets was immediate. (*People v Verin*, *supra*, 220 Cal.App.3d at p. 560 ["There is no question as to the proximity because just moments after [the officer] yelled, 'Hold on,' appellant discarded the heroin"].)

The flagrancy and purposefulness of the official or police misconduct has been said to be the most important factor because "'it is directly tied to the purpose of the exclusionary rule—deterring police misconduct.'" (*People v. Brendlin* (2008) 45 Cal.4th 262, 271.) Here, it cannot be said evidence at the suppression hearing revealed Mears concocted defendant's detention or arrest, or acted in bad faith amounting to misconduct. It revealed that Mears did not have reasonable cause to detain or arrest defendant for violating Vehicle Code section 21956, subdivision (a) due to a mistake of law. We do note, however, that "[Vehicle Code s]ection 21956, subdivision (a) was enacted over 40 years ago. [Citation.] This is more than enough time for any California police department to analyze and properly instruct its officers that pedestrians can legally walk in the roadway in a business or residential district. [Citation.]" (*People v. Cox*, *supra*, 168 Cal.App.4th at pp. 710-711.)

Significantly here, we now turn to whether an intervening circumstance existed that would purge the primary taint of the illegality. The trial court denied defendant's motion to suppress, specifically finding "defendant abandoned [the] property and threw it, and that intervening act took away [the] taint of an unlawful detention."

> "In determining whether the abandonment breaks the causal connection between the detention and the act of abandonment, courts look to whether the action was 'sufficiently an act of free will.' [Citations.] This determination demonstrates whether the evidence was brought about by exploitation of the illegality or, instead, by means sufficiently

8.

distinguishable to be purged of the primary taint. [Citation.]" (*People v. Verin*, *supra*, 220 Cal.App.3d at p. 559.)

The officers in *Verin* were conducting an investigation of drug activity in the Papago Court area. One of the officers stopped the defendant and his friend who were walking in a high crime area at 7:25 p.m. The defendant continued walking after the officer said, "'Hold it. Police'" or "'Hold on. Police.'" (*Id*. at p. 554.) The defendant then dropped some heroin he had pulled from his pocket onto the ground before returning to the officer. (*Ibid*.) The court concluded the officer had detained the defendant when he ordered him to stop, and the detention was unreasonable under the circumstances because the defendant had only walked through a high crime area in the early evening. The officer had not observed any facts that suggested the defendant was involved in drug activity. (*Id*. at p. 558.) Similarly here, Mears detained defendant when he ordered him to stop, and Mears directed defendant to remove his hands from his pockets. Further, the detention was unreasonable under the circumstances because defendant had not violated Vehicle Code section 21956, subdivision (a) by walking down the middle of the residential roadway in the 1500 block of Palm Drive. Neither did Officer Mears testify to any facts that would suggest defendant was involved in drug activity. In this case, nothing happened between the detention and discovery of the evidence that would "purge" the primary taint. Defendant's act of tossing the plastic bag as he removed his hands from his pockets was not "sufficiently an act of free will." After the detention, defendant did nothing but comply with Mears's commands. The search, therefore, is still tainted by the illegality of the detention and the evidence should have been suppressed. Thus, the trial court erred in denying defendant's motion to suppress the evidence.

Lastly, we cannot find this error harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The methamphetamine evidence comprised the entire case against defendant. (Cf. *People v. Minjares* (1979) 24 Cal.3d 410, 424.)

Because we will reverse the judgment, we do not reach defendant's request that we independently review the *Pitchess* materials to ensure discoverable documents were not improperly withheld.

## DISPOSITION

The judgment is reversed.  The order denying the motion to suppress is vacated, and the trial court is ordered to make a new order granting the motion to suppress.