[No. A093287. First Dist., Div. Three. Mar. 21, 2002.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARNAYE McNEIL, Defendant and Respondent.

COUNSEL

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christopher W. Grove and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Appellant.

Kathleen Kahn, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

POLLAK, J.—Defendant Charnaye McNeil was arrested for violating an Oakland ordinance that prohibits standing in a roadway in a manner that

interferes with traffic. In a search incident to her arrest police found a significant quantity of cocaine base in defendant's possession. She was charged with possession of the drug for sale. The trial court granted defendant's motion to set aside the information, ruling that the Oakland ordinance used as the basis to arrest and search defendant was preempted by state law and void under settled precedents. The People appeal, contending that the arresting officers proceeded in good faith based on a local ordinance they reasonably believed to be valid and enforceable. We affirm the order setting aside the information.

## BACKGROUND

On June 12, 2000, Police Officer Patrick Gonzales and his partner were patrolling late at night on 7th Avenue, a narrow residential street in Oakland. Officer Gonzales saw defendant standing in the street, approximately 9 feet from the nearest sidewalk and 20 feet from the corner of 7th Avenue and Foothill Boulevard. A car turning onto 7th Avenue from Foothill would have had to veer around defendant in order to pass. Driving toward Foothill, Officer Gonzales stopped his patrol car 20 feet from defendant, and he and his partner approached her on foot.

Defendant could produce no identification but supplied her correct name, address and birth date when requested. She could not explain what she was doing in the area. The officers attempted to run a records check on defendant through the Department of Motor Vehicles (DMV), but the DMV computer was down. Gonzales asked defendant if anyone in the vicinity could confirm her identity. She stated that no one in this neighborhood knew her. From her demeanor, Officer Gonzales suspected defendant was under the influence of drugs.

The officers placed defendant under arrest for violating Oakland Municipal Code (OMC) section 10.24.040.[1] In a search incident to the arrest, Gonzales found 19 off-white rocks suspected to be rock cocaine in defendant's left-front jacket pocket.

Defendant was charged by felony complaint with possessing cocaine base for sale. After a preliminary hearing and suppression motion, she was held to answer and an information was filed on the same charge. Defendant thereafter moved successfully to set aside the information pursuant to Penal Code section 995, and this timely appeal followed.

---

[1]OMC section 10.24.040 provides as follows: "No person shall stand in any roadway other than in a safety zone or in a crosswalk if such action interferes with the lawful movement of traffic. This provision shall not apply to any public officer or employee of a public utility when necessarily upon a street in line of duty."

## DISCUSSION

■ The trial court ruled that defendant's arrest and the subsequent search were unlawful. Citing decades-old appellate decisions holding virtually identical city ordinances to be void, the trial court found that OMC section 10.24.040 was preempted by a conflicting state Vehicle Code provision, and that the officers had no probable cause to arrest defendant for violating it even if they believed in good faith that the ordinance was enforceable.[2] Appellant concedes for purposes of this appeal that the trial court was correct in finding that the Oakland ordinance is preempted by state law, but contends that the law was nonetheless "presumptively valid" at the time of defendant's arrest and therefore provided a constitutionally adequate basis for the search under *Michigan v. DeFillippo* (1979) 443 U.S. 31 [99 S.Ct. 2627, 61 L.Ed.2d 343] (*DeFillippo*).

In *DeFillippo*, the United States Supreme Court held that the exclusionary rule does not apply to evidence obtained as a result of an arrest made in good faith reliance on a statute later found to be unconstitutional. The Supreme Court observed that the validity of an arrest for Fourth Amendment purposes does not depend on whether the suspect actually committed a crime, but on whether the arresting officer had probable cause to believe that the suspect had violated the law. (*DeFillippo, supra,* 443 U.S. at p. 36 [99 S.Ct. at p. 2631].) As framed by the court, the issue in *DeFillippo* was straightforward: "The . . . question . . . is whether . . . the officer lacked probable cause to believe that the conduct he observed and the words spoken constituted a violation of law simply because he should have known the ordinance was invalid and would be judicially declared unconstitutional. The answer is clearly negative." (*Id.* at p. 37 [99 S.Ct. at p. 2632].) It was critical to the court's conclusion in *DeFillippo* that at the time of the arrest and search, "there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance. A prudent officer, in the course of determining whether respondent had committed an offense . . . should not have been required to anticipate that a court would *later* hold the ordinance unconstitutional." (*Id.* at pp. 37-38 [99 S.Ct. at p. 2632], italics added.)

The issue before us is whether the Oakland ordinance in issue was, in fact, "presumptively valid" under *DeFillippo* or whether its continuing enforceability had been so undermined by earlier precedents that Oakland law

---

[2]In contrast to the Oakland ordinance, Vehicle Code section 21954, subdivision (a) *allows* pedestrians to walk on public roadways as long as they yield to vehicular traffic: "Every pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard."

enforcement personnel could not reasonably rely upon it as a basis for making an arrest.

*State Preemption of OMC Section 10.24.040*

The California Vehicle Code was first held to be preemptive of local ordinances regulating pedestrians in *Pipoly v. Benson* (1942) 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515] (*Pipoly*). In a personal injury suit, the jury had been instructed to find the plaintiff contributorily negligent if he had violated a Los Angeles municipal ordinance providing that " 'No pedestrian shall cross a roadway other than by a crosswalk in a central traffic district or in any business district.' " (*Id.* at p. 368.) *Pipoly* held that the ordinance was void and the instruction erroneous because the State of California had preempted the entire field of "[t]he regulation of pedestrian traffic in its use of the public roadways." (*Id.* at p. 372.) The court found the Legislature's intent to occupy this field clearly set forth in former section 458 (now § 21) of the Vehicle Code: " 'The provisions of this division are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein.' " (*Pipoly, supra,* 20 Cal.2d at p. 372.)[3]

Although the Legislature had at the time expressly authorized local regulation of a few discrete subject areas covered by the Vehicle Code, such as parking, the court in *Pipoly* found that the subject of pedestrian conduct was reserved exclusively to the state. (*Pipoly, supra,* 20 Cal.2d at pp. 372-373.) The year after *Pipoly* was decided, a statute providing limited authorization for localities to regulate pedestrians was added to the Vehicle Code. Former section 459.1 (now § 21961) of the Vehicle Code, enacted in 1943, provided that state regulation of pedestrian traffic did not bar localities " 'from adopting ordinances prohibiting pedestrians from crossing roadways at other than crosswalks.' " (*Holman v. Viko* (1958) 161 Cal.App.2d 87, 90 [326 P.2d 551].)[4] However, cases decided under Vehicle Code former section 459.1 and its successor have construed this grant narrowly, holding that it only authorizes local regulation of pedestrians crossing public roadways, not

---

[3] Vehicle Code section 21, adopted in its current form in 1959, is substantively identical to Vehicle Code former section 458: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."

[4] Vehicle Code section 21961 is substantively identical to former section 459.1: "This chapter [entitled Pedestrians' Rights and Duties, commencing with section 21949] does not prevent local authorities from adopting ordinances prohibiting pedestrians from crossing roadways at other than crosswalks."

regulation of persons standing in or walking along such roadways. (See *Newton v. Thomas* (1955) 137 Cal.App.2d 748, 762 [291 P.2d 503] (*Newton*); *Holman v. Viko, supra*, 161 Cal.App.2d at p. 93; *Wooldridge v. Mounts* (1962) 199 Cal.App.2d 620, 624 [18 Cal.Rptr. 806] (*Wooldridge*).)

*Newton* and *Wooldridge* are particularly significant here. *Newton* invalidated a Gilroy ordinance that prohibited standing in a roadway " 'if such action interferes with the lawful movement of traffic.' " (*Newton, supra*, 137 Cal.App.2d at p. 762.) *Wooldridge* found that the following Los Angeles Municipal Code provision was preempted by the Vehicle Code: " 'No person shall stand in any roadway other than in a safety zone or in a cross-walk if such action interferes with the lawful movement of traffic. [¶] This section shall not apply to any police officer, surveyor, streetsweeper or other person when necessary upon a street in line of duty.' " (*Wooldridge, supra*, 199 Cal.App.2d at p. 623.)

The Gilroy and Los Angeles ordinances invalidated decades ago in *Newton* and *Wooldridge* are essentially identical to the Oakland ordinance in issue here. Both cases rely on *Pipoly*, a 60-year-old Supreme Court decision, and on plain language still found in the Vehicle Code declaring that no local authority "shall enact or enforce any ordinance" on matters covered by that code, pedestrian rights being one of them, without specific statutory authorization. (Veh. Code, § 21.) No subsequent decision has questioned or limited these precedents.

Thus, *DeFillippo* is entirely distinguishable. Here, there *was* controlling precedent, dating back many decades, that the Oakland ordinance was unenforceable. The fact that none of the precedents specifically mentioned or involved the Oakland ordinance is immaterial. The relevant case law did not turn on the particular wording of the local ordinances in question. It construed the statewide Vehicle Code, holding that it preempts and supercedes *all* local ordinances purporting to regulate the same subject matter.

*Good Faith of Arresting Officers*

The Attorney General insists that the Oakland ordinance was nonetheless presumptively valid from the point of view of the arresting officers. Appellant emphasizes the fact that the law was still in the OMC at the time of defendant's arrest. According to appellant, the officers could not reasonably be expected to know that tort cases arising in distant counties had undermined the ordinance's legal foundation. Relying on Fourth Amendment case law holding that the exclusionary rule should be applied only when it would tend to deter unlawful police conduct, appellant contends that applying it

here would pointlessly censure law enforcement for the Oakland City Council's failure to remove OMC section 10.24.040 from its books.

Fourth Amendment jurisprudence does not sanction blind enforcement of any statute that happens to appear on the books. The conceptual underpinnings for a good faith exception to the exclusionary rule were first spelled out in *United States v. Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677], a case involving a defective search warrant. In *Illinois v. Krull* (1987) 480 U.S. 340 [107 S.Ct. 1160, 94 L.Ed.2d 364], the court extended the good faith exception to evidence seized under a statute that was declared unconstitutional in an unrelated case the day after the search was conducted. While recognizing that officers cannot generally be expected to question the judgment of legislative bodies in enacting putatively constitutional laws (*id.* at pp. 350-351 [107 S.Ct. at pp. 1167-1168]), the Supreme Court in *Illinois v. Krull* and *United States v. Leon* also placed limits on the good faith exception. ■ Its application does not depend on the subjective good faith of individual officers, but on the objective reasonableness of the officers' reliance on a defective warrant or statute. (*Illinois v. Krull, supra,* 480 U.S. at p. 355 [107 S.Ct. at p. 1170].) Such a standard "requires officers to have a reasonable knowledge of what the law prohibits." (*United States v. Leon,* 468 U.S. at p. 920, fn. 20 [104 S.Ct. at p. 3419].) In particular, "[a] statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." (*Illinois v. Krull, supra,* 480 U.S. at p. 355 [107 S.Ct. at p. 1170].)

Moreover, the test in Fourth Amendment cases is not the good faith of the individual officer in the field, but the good faith of the law enforcement agency of which he or she is a part. (*In re Arron C.* (1997) 59 Cal.App.4th 1365, 1369 [69 Cal.Rptr.2d 852].) For example, in *Miranda v. Superior Court* (1993) 13 Cal.App.4th 1628 [16 Cal.Rptr.2d 858], the Fourth Appellate District held that the good faith exception announced in *United States v. Leon, supra,* 468 U.S. 897, did not apply to a search made in reliance on negligent police department record keeping even though the good faith of the officers conducting the search was not in question. (See *People v. Ivey* (1991) 228 Cal.App.3d 1423 [279 Cal.Rptr. 554] [good faith exception does not apply when arresting officer relies on information the police department knows or should know is inaccurate].)

The Attorney General cites *Johnson v. Palange* (1979) 122 R.I. 361 [406 A.2d 360], a Rhode Island Supreme Court case affirming a defense verdict in a false imprisonment suit brought against a police officer. The plaintiff contended that the defendant officer had no legal justification for arresting

him because the disorderly conduct ordinance he allegedly violated was indistinguishable from ordinances previously held void for vagueness by the United States Supreme Court and the Rhode Island court. The court rejected this claim, finding that the defendant police officer should not be held to the standard of an attorney trained in the law and familiar with the earlier cases. (*Id.* at pp. 365-366.)

We do not find *Johnson v. Palange, supra,* 406 A.2d 360, persuasive. The issue in the case was whether the arresting officer should be held personally responsible in damages for enforcing the local ordinance. The exclusionary rule and its exceptions were not in issue. The case arose before the decisions in *United States v. Leon, supra,* 468 U.S. 897, and *Illinois v. Krull, supra,* 480 U.S. 340, and involved none of the policy considerations that underpin those precedents.

Here, the trial court was correct in concluding that 40 years was enough time for responsible officials of the Oakland Police Department to learn and to educate their officers in the field that the ordinance in question was preempted by state law. That conclusion did not depend on any fine legal parsing or guesswork, but on the plain language of the state Vehicle Code, a body of law with which police officers are expected to be thoroughly conversant. Any possible doubt about the application of that language to the ordinance in question was settled decades ago. Although we do not question the arresting officers' subjective good faith in relying on OMC section 10.24.040, we do not find that reliance objectively reasonable under *United States v. Leon, supra,* 468 U.S. 897, and *Illinois v. Krull, supra,* 480 U.S. 340.

### DISPOSITION

The order setting aside the information is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.