[No. C057500. Third Dist. Nov. 21, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNELL COX, Defendant and Appellant.

**COUNSEL**

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Jeffrey D. Firestone and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—This case recasts Justice Cardozo's oft-quoted dictum on the exclusionary rule:[1] although the constables here blundered, the defendant will not go free.

After the denial of his motion to suppress evidence, defendant Donnell Cox pled no contest to a charge of resisting an executive officer arising from his refusal to permit officers to search him and his subsequent attempt to evade arrest. The trial court sentenced defendant to 16 months in prison, but granted him credit for time served and released him on parole.

On appeal, defendant contends the trial court erred in denying his suppression motion because the police lacked any reasonable suspicion that he was violating the law and therefore had no basis to conduct the investigatory detention that led to the search he resisted. Essentially, defendant argues that the officers' observations of his resistance (and subsequent testimony regarding those observations) were the product of the illegal seizure and should be excluded as fruit of the poisonous tree.

Although we agree with defendant that he was acting lawfully when the police detained him, and the police had no reasonable suspicion of the contrary, we find no error in the trial court's denial of his motion to suppress evidence because defendant's subsequent conduct in resisting the officers was an independent act that dissipated the taint from the unlawful seizure. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2006, around noon, Officers Darby Lannom and Rich Shiraishi of the Sacramento Police Department were on patrol in a marked patrol vehicle. Coming from North D Street, the officers continued on North 11th Street, which leads to a dead end. One side of 11th Street has a sidewalk, while the other is a vacant field without a sidewalk.

The officers noticed two vehicles and several individuals, including defendant, at this dead end. Several individuals were clustered around one of the vehicles, and defendant appeared to be approaching this vehicle when the

---

[1] *People v. Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585, 587] ("The criminal is to go free because the constable has blundered.").

officers arrived. Defendant continued past the vehicle, walking down the middle of the road, and passed the officers' patrol car. Officer Lannom stopped defendant because Sacramento's city code prohibits a pedestrian from walking down the middle of a road when a sidewalk is provided. (Sac. City Code, § 10.20.040.)[2]

Officer Lannom asked defendant "What's going on?" but defendant continued on his way. Exiting his vehicle, Officer Lannom detained defendant by ordering him to stop and directing him to the front of the patrol vehicle. Fists clenched,[3] defendant moved to the front of the patrol vehicle, but would not respond to Officer Lannom's attempts to identify him. Concerned about his safety, Officer Lannom attempted to search defendant for weapons. Defendant refused to comply, locking his elbows and resisting Officer Lannom's attempts to search him. Officer Shiraishi attempted to assist Officer Lannom, and in the ensuing struggle defendant escaped from their grip. Defendant broke into a run toward the empty field. Officers Shiraishi and Lannom gave pursuit. Defendant attempted to punch Officer Shiraishi and evaded yet another attempt to restrain him. Officers Shiraishi and Lannom finally caught up to defendant when he tripped and fell on his face. After several minutes of struggling, the officers subdued and handcuffed him.

An information was filed charging defendant with resisting an executive officer in the performance of his duties. Defendant filed a motion to suppress the evidence of his resistance. The magistrate denied the motion. In ruling on the motion to suppress, the magistrate concluded that defendant's actions had created sufficient reasonable suspicion for the police to at least stop him: "I must be missing something, cause it seems pretty apparent that the officer had reasonable cause to at least detain him. He's walking, what appears to be in the middle of a roadway, which there's no justification for that. [¶] So, certainly, the officer had cause to detain him, to question why he's walking in the roadway, and from there, it just escalated. [¶] So I don't see that the officer's conduct was anything other than reasonable under the circumstances. [¶] So I'm gonna deny the motion."

---

[2] Sacramento City Code section 10.20.040 provides: "Where sidewalks are provided, it is unlawful for any pedestrian to walk along and upon an adjacent roadway."

[3] Officer Lannom testified that one fist was not fully clenched, leading him to believe that defendant was potentially holding something in his partially clenched fist. Nothing was ever recovered from defendant to corroborate that suspicion, however.

## DISCUSSION

### I

### *Standard of Review*

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review. [Citations.] The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' " (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

### II

### *The Trial Court Correctly Denied Defendant's Motion to Suppress*

Defendant contends the magistrate erred in denying his motion to suppress because subdivision (a) of Vehicle Code section 21956[4] is controlling and his conduct (walking down the middle of a street in a business district) was not illegal. He essentially argues that because the police had no lawful basis to detain him, the observations and testimony of the officers regarding his subsequent conduct (resisting arrest) had to be excluded because they were tainted by the illegality of the detention.

As we will explain, we conclude that (1) the Vehicle Code section preempts the Sacramento City Code provision; (2) defendant's conduct in

---

[4] Vehicle Code section 21956, subdivision (a), provides: "No pedestrian may walk upon any roadway outside of a business or residence district otherwise than close to his or her left-hand edge of the roadway." Further statutory references are to the Vehicle Code unless otherwise indicated.

walking down the middle of the street in a business district did not violate section 21956; and (3) therefore the police lacked any reasonable suspicion to detain defendant; but (4) defendant's resistance to arrest was an independent act that dissipated the taint stemming from the illegal detention.

A

*The Sacramento City Code Is Preempted by the Vehicle Code*

Officer Lannom initially stopped defendant based on his belief that defendant had violated Sacramento City Code section 10.20.040, which requires a pedestrian to walk on a sidewalk if one is available. Defendant cites *People v. McNeil* (2002) 96 Cal.App.4th 1302 [118 Cal.Rptr.2d 54] to support his argument that the Vehicle Code preempts local regulations of pedestrian conduct and makes his actions lawful. We agree.

■ In *McNeil*, Oakland police arrested the defendant for standing in the middle of a roadway, in violation of Oakland's municipal code. (*People v. McNeil, supra,* 96 Cal.App.4th 1302, 1303–1304.) In finding Oakland's municipal code unenforceable, the court in *McNeil* relied on our Supreme Court's decision in *Pipoly v. Benson* (1942) 20 Cal.2d 366 [125 P.2d 482]. (*McNeil,* at pp. 1306–1307.) *Pipoly* determined that the Vehicle Code expressed the Legislature's intent to occupy the field of pedestrian traffic on public roads and that any contrary local regulation was invalid.[5] (*Pipoly,* at pp. 371–373.) Sacramento City Code section 10.20.040 attempts to regulate pedestrian traffic on public roads, something the Legislature expressly intended the state to regulate. Sacramento City Code section 10.20.040 is thus preempted and unenforceable.

B

*Defendant's Conduct Did Not Violate Section 21956*

Defendant next argues that section 21956 and existing law make his conduct (walking down the middle of the road) lawful. We agree.

■ Since section 21956, subdivision (a), only restricts pedestrians from walking on roadways outside of business or residential districts, the logical

---

[5] The court in *Pipoly* interpreted former section 458, which became section 21. Section 21 provides, "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."

implication (taking the obverse of this section) is that *inside a business or residential district*, a pedestrian may indeed walk in the middle of the road.[6]

Interpreting section 21956, subdivision (a) to permit pedestrians to walk within a roadway also comports with existing case law. In *McGough v. Hendrickson* (1943) 58 Cal.App.2d 60, 63 [136 P.2d 110], the court noted that it was well-settled law that " 'pedestrians have a right to travel anywhere upon a public highway in a residence district.' " Going back still farther, our Supreme Court has held that this right of a pedestrian also extends to city streets.[7]

Here, the trial court found that 11th Street was located within a business district. Defendant was therefore lawfully walking in the middle of the street, and his conduct in doing so cannot form the basis of a lawful detention.

III

*The "Good Faith" of the Police Does Not Justify the Detention*

Although the People concede that section 21956, subdivision (a) preempts Sacramento City Code section 10.20.040, they argue that the language in section 21956, subdivision (a) is confusing and that a reasonable officer could have interpreted section 21956, subdivision (a) to permit localities to regulate

---

[6] The court in *People v. McNeil* applied the same methodology in interpreting the meaning of section 21954. "In contrast to the Oakland ordinance, Vehicle Code section 21954, subdivision (a) *allows* pedestrians to walk on public roadways as long as they yield to vehicular traffic: 'Every pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard.' " (*People v. McNeil, supra,* 96 Cal.App.4th at p. 1305, fn. 2.)

[7] "As to foot passengers, the old common-law freedom of use of the king's highway has not been modified in this state by any positive enactment. So that it still remains the law that foot passengers have the right to use and traverse the highway at all its points, being chargeable only for the exercise of a due amount of care, which due amount of care, in its *quantum*, is governed by the circumstances attending the use which the pedestrian actually makes. Thus in this state, even in populous streets of cities, pedestrians are not restricted to the crossings in traversing a street, but may cross it at any point. And the same is true of their right to walk along the roadbed of a highway. Owing to the facts of the great congestion of certain parts of our modern cities, of the immensely improved modes of rapid transportation over the highway and of the desirability of seeing that all such traffic is moved as expeditiously as may be, some cities have compelled pedestrians to use the authorized crossings alone. Slow moving vehicles are required by our own law to keep as closely as possible to the right hand boundary of the highway [citation] and it would be well to impose such an exaction on pedestrians. But no such law is upon our books, and it follows therefore that all parts of the highway are as open to the use of foot passengers as to vehicles." (*Raymond v. Hill* (1914) 168 Cal. 473, 482 [143 P. 743].)

pedestrian conduct inside of a business or residential district. Defendant responds that the "good faith" belief of Officer Lannom that Sacramento City Code section 10.20.040 was good law is irrelevant in determining the legality of the detention. We agree with defendant.

■ "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) "If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable." (*U.S. v. Mariscal* (9th Cir. 2002) 285 F.3d 1127, 1130.)

The People agree that in general a mistake of law is unreasonable and that any subsequent detention based on that mistake would be unjustified. But the People suggest that this general rule is not absolute and cite to *People v. Glick* (1988) 203 Cal.App.3d 796 [250 Cal.Rptr. 315] in support. We find that *Glick* actually cuts against the People here.

In *Glick*, a California officer pulled over a New Jersey vehicle for failure to display registration tags in the mistaken belief that New Jersey law required registration tags as California does. (*People v. Glick, supra*, 203 Cal.App.3d at pp. 798–799.) Reversing the trial court's exclusion of the evidence gathered from the illegal stop, the appellate court predicated its holding on the reasonableness of the officer's conduct. (*Id.* at p. 801.) The officer in *Glick* knew the California Vehicle Code and was familiar with the vehicle codes of several states, all of which required registration tags. (*Id.* at pp. 799, 804.) Thus, at best, *Glick* provides a safe harbor to officers who make a reasonable mistake about the law of *another* state.[8]

In contrast to the officer in *Glick*, the officers here failed to comprehend the California Vehicle Code, something they are reasonably expected to know.[9] (See *People v. McNeil, supra*, 96 Cal.App.4th at p. 1309.) Section 21956,

---

[8] It is worth noting that *People v. White* (2003) 107 Cal.App.4th 636 [132 Cal.Rptr.2d 371] goes further and criticizes the notion in *Glick* that "a suspicion founded on a mistake of law can constitute the reasonable basis required for a lawful traffic stop." (*White*, at pp. 643–644.) Several federal circuit courts have held similarly. (See *id.* at pp. 643–644 [citing to several federal circuit court of appeals decisions].)

[9] The *Glick* court suggests in passing that "a California Highway patrolman stationed in Tahoe may be reasonably expected to have a general understanding of Nevada's vehicle registration laws." (*People v. Glick, supra*, 203 Cal.App.3d at pp. 803–804.) If an officer near the border of a contiguous state might be reasonably expected to have a "general understanding" of the other state's vehicle code, it goes without saying that he would be reasonably expected to know the vehicle code of his own state.

subdivision (a) was enacted over 40 years ago. (Stats. 1959, ch. 3, § 2, pp. 1523, 1688.) This is more than enough time for any California police department to analyze and properly instruct its officers that pedestrians can legally walk in the roadway in a business or residential district. (Cf. *People v. McNeil, supra,* 96 Cal.App.4th at p. 1309 ["the trial court was correct in concluding that 40 years was enough time for responsible officials of the Oakland Police Department to learn and to educate their officers in the field that the ordinance in question was preempted by state law"].)

We do not dispute that Officer Lannom believed that Sacramento City Code section 10.20.040 was good law and made defendant's jaunt in the middle of the roadway illegal. But neither the reasonableness of his belief nor the fact that his belief was held in "good faith" is relevant in establishing the legality of defendant's detention. "[T]here is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law. [Citation.] To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." (*U.S. v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1106.)

IV

*Defendant's Resistance of Arrest Following His Unlawful*
*Detention Dissipated the Taint from the Illegality*

Defendant next argues that because his detention was illegal, the observations made by the police as a result of the illegal detention (viz., of his subsequent resistance of arrest) should be excluded as fruit of the poisonous tree. We disagree.

■ The general remedy available for a violation of one's Fourth Amendment rights is that the evidence discovered as a result of the violation is excluded. The question here is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun v. United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].)

In analyzing whether the taint has been purged or dissipated, we look to "the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct." (*People v. Boyer* (2006) 38

Cal.4th 412, 448 [42 Cal.Rptr.3d 677, 133 P.3d 581].) The temporal proximity of defendant's illegal detention to his resistance of arrest was virtually instantaneous, which normally would lean toward excluding the evidence. The conduct of the officers, though erroneous, was hardly flagrant—they made a mistake regarding the law. The interesting factor in our analysis here is "the presence of intervening circumstances."

Normally, in a case where evidence is uncovered following an illegal search, the search itself procures the evidence sought to be excluded. But it would be a curious use of language to say that the officers' detention of defendant (illegal though it might have been) *procured* the officers' subsequent observations of his resistance to arrest. Unlike tangible evidence that is uncovered when police conduct an unlawful search, defendant's reaction here to being detained was not inevitable, but an independent decision he himself made, amounting to an intervening circumstance that cured the taint.

Other cases have dealt with independent decisions of the defendant that severed the causal chain between illegal police conduct and the recovery of evidence. In *People v. Prendez* (1971) 15 Cal.App.3d 486 [93 Cal.Rptr. 180] the police illegally entered a motel and the defendant fled. (*Id.* at pp. 487–488.) The police caught the defendant and recovered several balloons containing narcotics. (*Id.* at p. 488.) In rejecting the defendant's argument that the police officers' illegal entry tainted his arrest and the seizure of evidence, the court noted that the defendant's action in taking flight was an independent, intervening act, sufficiently distinct from the illegal entry to cure the taint.[10] (15 Cal.App.3d at pp. 488–489.)

■ Defendant's flight and resistance to arrest are analogous to the defendant's flight in *Prendez*. It would be anomalous indeed to say that a defendant's choice to flee is an independent act, but that his choice to flee and forcefully resist arrest are not. Here, defendant chose of his own free will to resist and impede Officer Lannom's search, and then chose to flee. Both of these choices were independent, intervening acts, sufficiently distinct from the illegal detention to dissipate the taint. We thus affirm the trial court's ruling in denying defendant's motion to dismiss—not because (as the trial court found) defendant broke the law when he walked in the middle of the roadway, but rather because his resistance to arrest and attempted flight dissipated the taint created by the illegal detention.

---

[10] The court goes on to note that "[The defendant]'s act in fleeing is analogous to the commission of an offense subsequent to the police conduct said to be illegal—which subsequent offense then dissipates the taint caused by the police's original misconduct." (*People v. Prendez, supra*, 15 Cal.App.3d at p. 489.)

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2009, S169133. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.