Filed 3/12/25  P. v. Fourzon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BARRY EDWARD FOURZON,<br><br>Defendant and Appellant. | C099939<br><br>(Super. Ct. No. CRF190006341) |

During an attempt to detain defendant Barry Edward Fourzon, Fourzon physically resisted officers' efforts to handcuff him and, during the struggle, tossed a handgun into the roadway.  Though the trial court found the initial effort to detain Fourzon unlawful, it nevertheless denied Fourzon's motion to suppress the evidence of the officers' observations and the handgun, finding Fourzon's actions in resisting the detention and abandoning the handgun were independent acts unrelated to any search.  Fourzon subsequently pled guilty to assault with a deadly weapon and the court sentenced him to an aggregate term of 15 years.  He now appeals, challenging the denial of his motion to

1

suppress evidence. We agree with the trial court and will affirm. Fourzon's independent actions dissipated any taint from the illegal detention.

## FACTUAL BACKGROUND

In 2019, Officer David Chapman was driving in a marked patrol car when he noticed a truck parked with the rear of the truck protruding into the southbound lane. Officer Chapman recognized the truck as belonging to a man who lived nearby. Officer Chapman parked behind the truck and activated his rear emergency lights, so that traffic behind him would be alerted to what he described as a traffic hazard. Upon exiting his patrol car, Officer Chapman spoke to the owner of the truck, who told him he was going to jump-start a Suzuki that was parked along the shoulder of the road and was facing northbound. During this conversation, Officer Chapman observed Fourzon sitting in the Suzuki's driver's seat. Officer Chapman recognized Fourzon as someone with whom he previously had contact and who Officer Chapman believed was on probation.

Officer Chapman walked over to the driver's door and told Fourzon he recognized him as someone on probation, but Fourzon denied it. Officer Chapman then asked Fourzon for his name. Fourzon identified himself as "Christopher Perry," and said he was born in 1979. Officer Chapman then requested a record check of "Christopher Perry" over his radio. He was told by dispatch[1] that Christopher Perry was "clear," not on probation or parole, and had no outstanding warrants. In an effort to confirm Fourzon's identity, Officer Chapman asked Fourzon if he had any identification. Fourzon told him he did not have any identification, he could not remember his driver's license number or Social Security number, and he was from the town of Anderson. While continuing to talk to Fourzon, dispatch told Officer Chapman that a male with the last name of Perry from Anderson and with a date of birth in 1987 had an outstanding

---

[1] Officer Chapman testified that he radioed "SHASCOM"; the parties refer to it as the officer's dispatch center and so will we.

2

misdemeanor warrant. Officer Chapman provided this information to Fourzon, but Fourzon did not respond. Based on the possible warrant, Officer Chapman decided to detain Fourzon and gave Fourzon instructions on how to comply with the process. After handcuffing Fourzon's left wrist, Officer Chapman was able to grab hold of Fourzon's right wrist as he continued to provide Fourzon instructions. Instead of complying, Fourzon attempted to pull his arms in front of him and abruptly stepped out of the Suzuki, upon which Officer Chapman lost his hold on Fourzon's right wrist. As Officer Chapman attempted to regain control of Fourzon's right wrist, Officer Chapman observed Fourzon throw a handgun into the roadway. Officer Chapman and another responding officer, Officer Joanna Bland, then successfully detained Fourzon in handcuffs.

Another officer arrived and identified Fourzon by his true name. A records check on Fourzon's true name revealed he was on postrelease community supervision.

An information charged Fourzon with one count of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (c)), one count of being a felon in possession of a firearm (§ 29800, subd. (a)), one count of illegally possessing ammunition (§ 30305, subd. (a)(1)), two counts of resisting an executive officer (§ 69), two counts of battery on a peace officer with injury (§ 243, subd. (c)(1)), one count of resisting a peace officer in the performance of the officer's duty and attempting to take the officer's firearm (§ 148, subd. (d)), and one count of false identification to a peace officer (§ 148.9, subd. (a)). The information also alleged a prior strike (§ 1170.12), a prior serious felony conviction (§ 667, subd. (a)(1)), and that Fourzon was released on bail or his own recognizance at the time he committed the instant offenses (§ 12022.1).

Pursuant to section 1538.5, Fourzon moved to suppress Officer Chapman's and Officer Bland's observations. Fourzon contended he was subject to an illegal and

---

[2]     Undesignated statutory references are to the Penal Code.

3

prolonged detention during which the officers' observations (of Fourzon throwing the firearm) constituted an illegal "search." According to Fourzon, these observations were made "through exploitation of the initial unlawful detention" and must be suppressed, even when they would provide a reason to further detain or arrest the individual. He further claimed there was no intervening circumstance that could purge the taint of the illegality. The prosecution argued the detention and arrest were based on consensual contact that led Officer Chapman to believe Fourzon was on probation and that Fourzon was estopped from challenging the legality of the detention and search because he lied about his true name.

At the hearing on Fourzon's motion, the trial court found that when the false name "Christopher Perry" "clear[ed]," Officer Chapman lacked any articulable suspicion to detain Fourzon. The court further found that the information of a misdemeanor warrant for someone with the last name "Perry" was an insufficient basis for Fourzon's arrest. However, because Fourzon did not submit to the arrest and voluntarily tried to get rid of the gun, the court found the gun was not discovered during a search but was instead abandoned. The court denied Fourzon's motion to suppress.

Fourzon pled guilty to assault with a deadly weapon and admitted the prior strike and the prior serious felony conviction in exchange for dismissal of all other charges. Per the agreement, the trial court sentenced Fourzon to an aggregate term of 15 years in state prison. Fourzon timely appealed.

## DISCUSSION

On appeal, Fourzon contends the trial court should have suppressed evidence of the firearm as fruits of his unlawful seizure because his actions were a direct response to his illegal seizure by law enforcement. Specifically, he argues he did not voluntarily discard the handgun and the taint on the evidence was not sufficiently attenuated. The People concede the initial seizure of Fourzon was unlawful but argue Fourzon's independent decision to physically resist Officer Chapman attenuated the firearm

4

evidence from the taint of any Fourth Amendment violation. Alternatively, the People contend Fourzon is estopped from seeking suppression because the police officer would have lawfully searched Fourzon and discovered the handgun if Fourzon had truthfully identified himself as someone on postrelease community supervision.

We accept the People's concession that the seizure of Fourzon was unlawful and agree Fourzon's resistance and act of throwing the firearm were independent acts that dissipated the taint stemming from the illegal seizure. Because we conclude the trial court properly denied Fourzon's motion to suppress under the attenuation doctrine, we need not discuss the People's estoppel argument.

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133-1134.)

"The Fourth Amendment protects against unreasonable searches and seizures." (*In re Raymond C.* (2008) 45 Cal.4th 303, 307.) "The touchstone of the Fourth Amendment is reasonableness." (*Ibid*.) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) As the trial court noted, when Officer Chapman decided to detain Fourzon, there was no articulable suspicion of criminal activity. Accepting the People's concession that Fourzon's initial detention was without proper

5

cause, we must analyze whether evidence was procured as a result of this illegality, requiring it to be suppressed.

The exclusionary rule of the Fourth Amendment mandates suppression of the evidence obtained as a direct result of an unlawful search or seizure and any " 'evidence later discovered and found to be derivative of an illegality,' the so-called ' "fruit of the poisonous tree." ' " (*Utah v. Strieff* (2016) 579 U.S. 232, 237.)  However, the exclusionary rule does not apply in every case involving a Fourth Amendment violation. (*People v. McWilliams* (2023) 14 Cal.5th 429, 437.)  Both the attenuation doctrine and theory of abandonment are exceptions to the exclusionary rule.  (*Strieff*, at p. 238; *People v. Parson* (2008) 44 Cal.4th 332, 345.)  Because we conclude that the attenuation doctrine applies here, we need not address Fourzon's argument that he did not voluntarily abandon the firearm.

"The attenuation doctrine holds that, notwithstanding the exclusionary rule, '[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." ' " (*People v. McWilliams*, *supra*, 14 Cal.5th at pp. 437-438.)  While "evidence may be excluded as 'fruit of the poisonous tree' where its discovery 'results from' or is 'caused' by a Fourth Amendment violation," exclusion is not required "where the evidentiary 'fruit' is derived from a source that is independent of the 'poisonous' conduct" or where " ' "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' " ' " (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1262.)  In analyzing whether the taint has been purged or dissipated, we look to the presence of intervening circumstances, the flagrancy of the

6

official misconduct, and the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence. (*Ibid.*)

Fourzon argues that the attenuation necessary to purge the taint of government illegality requires more temporal distance than we have here between his illegal detention and the discovery of evidence. While that is one factor for our consideration, it is not the only factor. (*Brown v. Illinois* (1975) 422 U.S. 590, 603-604.) "[T]he interval between the police misconduct and the acquisition of evidence is not itself dispositive and must be considered along with any intervening circumstances." (*U.S. v. Ienco* (7th Cir. 1999) 182 F.3d 517, 527; see also *People v. Brendlin* (2008) 45 Cal.4th 262, 270 [noting this temporal proximity is often found in cases involving resistance to police and while it weighs in favor of suppression, it is not dispositive].)

While the evidence in this case was observed simultaneously with Officer Chapman's efforts to unlawfully detain Fourzon, "an individual's decision to commit a new and distinct crime [in this case resisting arrest], even if made during or immediately after an unlawful detention," has been held to be "an intervening act sufficient to purge the 'taint' of a theoretically illegal detention." (*In re Richard G.*, *supra*, 173 Cal.App.4th at p. 1262.) An intervening circumstance can be anything "sufficient to 'break the causal chain . . . between the illegal arrest and the statements made subsequent thereto.' " (*People v. Gonzalez* (1998) 64 Cal.App.4th 432, 444.) Thus, we focus on whether Officer Chapman's observation of Fourzon throwing the handgun was obtained by exploitation of the illegality of his arrest, or rather, an act of free will that serves to purge the taint of the illegal detention. (*Wong Sun v. United States* (1963) 371 U.S. 471, 486.) We conclude it is the latter.

As the trial court found, the facts before us reveal that Fourzon chose not to submit to Officer Chapman's effort to handcuff him; rather, he voluntarily and actively resisted and, during that resistance, made the decision to throw the handgun. Resisting arrest is a crime. (§ 834a [person being arrested has duty not to use force to resist arrest]; *Evans v.*

7

*City of Bakersfield* (1994) 22 Cal.App.4th 321, 330-331 [no right exists to resist lawful or unlawful detention].) "The commission of a new crime by the defendant will ordinarily be an intervening independent act of the defendant's free will which purges the primary taint of prior police misconduct." (*People v. Coe* (1991) 228 Cal.App.3d 526, 531.) And Fourzon's reaction here to being detained was not inevitable, but an independent decision he himself made, amounting to an intervening circumstance that cured the taint. (See *People v. Cox* (2008) 168 Cal.App.4th 702, 712 [the defendant's decision to resist an unlawful detention was an intervening event that purged the taint of the unlawful detention].) It is hard to label Fourzon's actions as *resulting from* or *caused by* a Fourth Amendment violation when said actions were a product of Fourzon's own volitional conduct. (*In re Richard G.*, *supra*, 173 Cal.App.4th at p. 1262.)

The facts in this case are unlike those in *U.S. v. Stephens* (9th Cir. 2000) 206 F.3d 914, 917, relied upon by Fourzon. While *Stephens* dealt with the abandonment of property, it did not include any intervening circumstances between Stephens' unlawful seizure and the discovery of narcotics.

Nor is the case like *U.S. v. Ienco*, *supra*, 182 F.3d 517. In *Ienco*, law enforcement unlawfully detained the defendants in the back seat of a patrol car while the officers investigated the report for which they had originally been dispatched. Upon conclusion of that investigation, law enforcement arrested the defendants and a subsequent search of the back seat of the patrol car revealed keys to a nearby minivan, which law enforcement proceeded to search and therein discover contraband. (*Id*. at pp. 521-522.) In defending against a suppression motion, the government relied on the lawful arrest of the defendants as an intervening circumstance that purged the taint of the unlawful detention. However, in granting the motion to suppress, the trial court determined it could not conclude whether the keys were left in the patrol car during the unlawful detention or only after the lawful arrest. Thus, the court refused to find the lawful arrest was an intervening circumstance that severed the causal connection between the illegal detention and

8

discovery of the evidence in the minivan. (*Id.* at pp. 522-528.) This case does not suffer from the same quandary. Here, Fourzon's own conduct after his unlawful detention and before the discovery of the challenged evidence, was clearly an intervening circumstance.

We believe this case is more analogous to *People v. Cox*, *supra*, 168 Cal.App.4th 702 and *People v. Prendez* (1971) 15 Cal.App.3d 486. In *Prendez*, officers received information that the defendant was selling heroin from a specific motel room in Los Angeles. They entered the room without proper cause and the defendant fled across a field, away from the motel. An officer pursued the defendant. During the pursuit, the defendant was observed making a throwing motion and the officer observed objects land in the field. The defendant was arrested, and officers recovered the objects that the defendant had been seen throwing; they were balloons found to contain, in various forms, codeine, heroin, and methadone. (*Id.* at pp. 487-488.) The defendant was convicted in a court trial and on appeal contended the illegality of the officers' entry into the motel room tainted his arrest and the seizure of the balloons. (*Id.* at p. 488.) In affirming the conviction, the *Prendez* court held that the defendant's flight was an act of free will sufficient to purge the primary taint of the illegal entry. "Appellant's course of conduct was based on his desire, independently conceived, to get as much distance as possible between himself and the police. There is no right to a flight from unlawful arrest or entry and the officers' admittedly illegal conduct in effecting entry could confer no immunity from arrest outside the motel upon appellant. Appellant's act in fleeing is analogous to the commission of an offense subsequent to the police conduct said to be illegal—which subsequent offense then dissipates the taint caused by the police's original misconduct." (*Id.* at p. 489.) So too here. Fourzon had no right to resist an unlawful arrest and his actions in doing so dissipated the taint caused by Officer Chapman's misconduct in detaining him.

In *Cox*, a different panel of this court concluded a defendant's resistance to arrest, albeit following an unlawful detention, was an intervening circumstance that attenuated

9

the taint from law enforcement's illegal conduct. (*People v. Cox*, *supra*, 168 Cal.App.4th at pp. 711-712.) In *Cox*, police officers improperly detained the defendant based on a misunderstanding of law. (*Id*. at pp. 708-709.) When an officer attempted to search the defendant for weapons, the defendant resisted the search and fled. (*Id*. at p. 706.) The defendant moved to suppress evidence of his resistance at the trial court. (*Ibid*.) This court concluded "defendant's reaction here to being detained was not inevitable, but an independent decision he himself made, amounting to an intervening circumstance that cured the taint." (*Id*. at p. 712.) Further, an illegal detention does not give a defendant license to commit a separate crime. (*Id*. at pp. 711-712.) Both the defendant's choice of his own free will to resist and to flee "were independent, intervening acts, sufficiently distinct from the illegal detention to dissipate the taint." (*Id*. at p. 712.) As the *Cox* court concluded, "it would be a curious use of language to say that the officer['s] detention of defendant (illegal though it might have been) procured the officer['s] subsequent observations of [the defendant's] resistance to arrest." (*Ibid*.)

Similarly, here, Fourzon's resistance and act of throwing the handgun were not inevitable results of the seizure. Once Officer Chapman detained Fourzon, he could have peacefully complied with the officers' instructions, but instead he ignored them and actively resisted by pulling his arm away from the officer, stepping out of the car, and throwing the handgun away from his body. As we have stated above, Fourzon's actions of resisting arrest were of his own free will and thus an independent, intervening act distinct from the unlawful seizure.

Next, we weigh the flagrancy of the officer's conduct. The flagrancy of misconduct weighs in favor of suppression "only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." (*Utah v. Strieff*, *supra*, 579 U.S. at p. 241.) Not all law enforcement errors in judgment amount to a purposeful or flagrant violation of the defendant's Fourth Amendment rights. (*Ibid*.) This factor does not weigh in favor of suppression if "there is no indication" that the defendant's

10

seizure "was part of any systemic or recurrent police misconduct." (*Id.* at p. 242.) Officer Chapman did not attempt to detain Fourzon until he believed Fourzon was not being forthcoming about his identity, was possibly concealing something within the vehicle, and possibly had an outstanding warrant. While Officer Chapman's conduct did not rise to cause to detain or arrest, the evidence does not reflect that it was purposeful, flagrant, or part of any systemic or recurrent police misconduct. Thus, this factor does not weigh in favor of suppression. We thus affirm the judgment.

**DISPOSITION**

The judgment is affirmed.

/s/
EARL, P. J.

We concur:


/s/
MESIWALA, J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.