Filed 4/23/15  P. v. Jones CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B255728 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA090986) |
| v. | |
| MICHAEL ANTHONY JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jared D. Moses, Judge.  Reversed and remanded with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General and Timothy M. Weiner, Deputy Attorney General for Plaintiff and Respondent.

_____

Appellant Michael A. Jones was convicted, following a jury trial, of one count of possession of a controlled substance in violation of Health and Safety Code section 11350, subdivision (a) and one count of possession of a smoking device in violation of Health and Safety Code section 11364.1, subdivision (a)(1). The trial court found true the allegations that appellant had suffered three prior serious or violent felony convictions within the meaning Penal Code sections 667, subdivisions (b) through (i) and 1170.12 (the Three Strikes law) and had served six prison terms within the meaning of section 667.5, subdivision (b). The trial court sentenced appellant to the midterm of two years, doubled to four years pursuant to the Three Strikes law, plus four consecutive one-year terms pursuant to section 667.5.

Appellant appeals from the judgment of conviction, contending the trial court erred in denying his motion to suppress evidence made pursuant to Penal Code section 1538.5. We agree, and reverse the judgment of conviction.


Facts[1]

On September 17, 2013, at about 1:30 a.m., Los Angeles County Sheriff's Deputy Jeffery Johnsen and his partner Deputy Klinski were on patrol in Monrovia when they observed appellant walking down the middle turn lane of Mountain Avenue. At that location, Mountain Avenue is a three-lane street, with one lane for northbound traffic, one lane for southbound traffic and a middle lane for turning. Basically, the area was a residential one.

Appellant turned off Mountain Avenue and onto Meridian Street. Deputy Johnsen believed that appellant was in "[v]iolation of walking in the middle of the road, 21956, I believe of the Vehicle Code." Deputy Johnsen and his partner "stopped him for the subsequent violation and were going to warn or cite him."

---

[1] These facts are taken from the hearing on appellant's motion to suppress, held on December 4, 2013. After appellant's motion was denied, appellant was tried by a jury. Neither party points to any additional relevant facts introduced at trial.

The two deputies pulled up behind appellant in their marked patrol car and "asked him—or told him to stop." Deputy Klinski "yelled" at appellant from the window of the patrol car. Deputy Johnsen did not remember what his partner yelled. Whatever he yelled caused appellant to stop. Appellant "stopped right where he was." The deputies then directed appellant to come to the patrol car. Appellant complied.

When appellant reached the patrol car, Deputy Johnsen first asked appellant if he was on probation or parole. When appellant replied that he was not, Deputy Johnsen asked if he had anything illegal on him. Appellant replied that he had pipes. Deputy Johnsen then asked if the pipes were for marijuana. Appellant stated they were for crack. Deputy Johnsen then asked for permission to search appellant. Appellant consented. The search uncovered the pipes and a brown bottle containing 18 white pills. Based on the numbers and markings on the pills, Deputy Johnsen determined that the pills were hydrocodone. The deputies arrested appellant.

Discussion

Appellant contends the trial court erred in denying his motion to suppress evidence made pursuant to Penal Code section 1538.5. He contends that his initial detention was not valid, and his subsequent consent was not voluntary.

While a defendant has the burden of filing a motion asserting the absence of a warrant, "[i]t is the People's burden to justify a warrantless search. (*Vale v. Louisiana* (1970) 399 U.S. 30, 34; *People v. Johnson* (2006) 38 Cal.4th 717, 723; *People v. Williams* (1999) 20 Cal.4th 119, 127.)" (*People v. Schmitz* (2012) 55 Cal.4th 909, 915 fn. 4.)

The standard of review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

3

"When ruling on a suppression motion, 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court.' [Citations.] On appeal, the facts must be reviewed in the light most favorable to the judgment, and the trial court's finding must be upheld if supported by substantial evidence." (*People v. Jones* (1989) 209 Cal.App.3d 725, 730-731.)

### a. Ruling

The court ruled: "The officer's testimony was that the location was—I believe he did testify was residential, as I recall on questioning from [appellant's counsel], which would technically place this outside of . . . 21956. So it appears there may be a tentative Fourth Amendment violation here."[2] The court continued: "But *Herring* [*v. United States* (2009) 555 U.S. 135], in my view, really radically changed the way we litigate motions to suppress. And then even if there is a Fourth Amendment violation, if the officer's conduct is, at worse, negligent because they're relying on perhaps a Vehicle Code section that does not technically fit the circumstances, exclusion is still not the remedy." The court found: "In this case, at worse, the officer was negligent in his interpretation of the statute that he felt that the defendant was violating."

### b. Mistake of law

Vehicle Code[3] section 21956, subdivision (a), provides: "No pedestrian may walk upon any roadway outside of a business or residence district otherwise than close to his

---

[2] Thus, the trial court made no finding that Deputy Johnsen believed the area was not residential, much less a finding that the character of the area was ambiguous and any mistake as to its nature by Deputy Johnsen would be reasonable. The prosecutor did not argue in the trial court that Deputy Johnsen made a mistake of fact and the Attorney General does not make such an argument on appeal. We see no evidence that Deputy Johnsen made a mistake of fact about the character of the area, and no basis to conclude that such a mistake would have been reasonable.

[3] All further statutory references are to the Vehicle Code unless otherwise specified.

4

or her left-hand edge of the roadway."  As our colleagues in the Third District Court of Appeal have explained, "Since section 21956, subdivision (a), only restricts pedestrians from walking on roadways outside of business or residential districts, the logical implication (taking the obverse of this section) is that inside a business or residential district, a pedestrian may indeed walk in the middle of the road."  (*People v. Cox* (2008) 168 Cal.App.4th 702, 708-709, italics omitted.)

The trial court expressly found that Deputy Johnsen testified that the location was residential, and impliedly found that the area was residential.  We defer to the trial court's findings of fact if supported by substantial evidence.  (*People v. Glaser, supra,* 11 Cal.4th at p. 362.)  Deputy Johnson's testimony on cross-examination is substantial evidence to support the trial court's finding.  Appellant's counsel asked,  "So basically, it's all residential houses; right?  People - - basically there are no businesses, it's where people live?"  The deputy responded,  "Yes, ma'am."  Even assuming for the sake of argument that this testimony was in conflict with other aspects of Deputy Johnsen's testimony, or that this testimony was capable of supporting more than one inference, "'the power to  . . . resolve any conflicts in the testimony'" and to "'draw factual inferences, is vested in the trial court.'"  (*People v. Jones, supra,* 209 Cal.App.3d at pp. 730-731.)  Thus, Deputy Johnsen was mistaken in believing that appellant was violating section 21956 by walking in the middle of the road in a residential district.[4]

In their briefing on appeal, appellant contended, and respondent agreed, that the good faith exception to the exclusionary rule was not available when an officer makes a pure mistake of law.  At the time of briefing, the parties were correct.

---

**4**    We note that although the People had the burden of proving that the warrantless search of appellant was justified, the prosecutor did not ask Deputy Johnson any questions on direct examination about the residential or business character of the area where appellant was observed, did not ask any questions on redirect examination about the character of the area to clarify any possible ambiguity in the deputy's testimony and did not argue that the area was outside a residential or business district and so appellant had violated section 21956.  On appeal, the Attorney General does not argue that the area was outside a business or residential district and so appellant violated section 21956.

California courts "on strong policy grounds have generally refused to excuse a police officer's mistake of law." (*People v. Teresinski* (1982) 30 Cal.3d 822, 831; *People v. Reyes* (2011) 196 Cal.App.4th 856 [having only a single rear license plate was not a violation of law and "'An officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law.  [¶] . . . A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable'"]; *People v. Carmona* (2011) 195 Cal.App.4th 1385; *People v. Cox, supra*, 168 Cal.App.4th at pp. 709-711.)

During the pendency of this appeal, the United States Supreme Court issued its opinion in *Heien* v. *North Carolina* (2014) ___ U.S. ___ [135 S.Ct. 530] (*Heien*).  The court held that a "reasonable" mistake of law can give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment.  However, the majority opinion provides little guidance on what constitutes a "reasonable" mistake of law.  The court noted the reality that "an officer may 'suddenly confront' a situation in the field as to which the application of a statute is unclear—however clear it may later become." (*Heien*, *supra*, ___ U.S. at p. __ [135 S.Ct. at p. 533].)  The court added, "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes . . . must be *objectively* reasonable.  We do not examine the subjective understanding of the particular officer involved.  Cf. *Whren v. United States*, 517 U.S. 806, 813 (1996).  And the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation.  Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." (*Heien, supra*, ___ U.S. at p. ___ [135 S.Ct. at pp. 539-540].)

The United States Supreme Court found "little difficulty" in concluding the officer's mistake in *Heien* was reasonable. (*Heien*, *supra*, ___ U.S. at p. ___ [135 S.Ct. at p. 533].)  The officer stopped Heien for having only a working left brake light; the right brake light did not illuminate. (*Ibid*.)  The officer believed that the North Carolina

Vehicle Code required a vehicle to have two working brake lights. The North Carolina Court of Appeal subsequently held that only one working brake light was required. (*Heien*, *supra*, ___ U.S. at p. ___ [135 S.Ct. at pp. 533-534].)

The United States Supreme Court noted that the "statute at issue refers to 'a stop lamp,' suggesting the need for only a single working brake light, [but] it also provides that '[t]he stop lamp may be incorporated into a unit with one or more *other* rear lamps'" and "another subsection of the same provision required that vehicles 'have all originally equipped rear lamps or the equivalent in good working order.'" (*Heien*, *supra*, ___ U.S. at p. ___ [135 S.Ct. at p. 533].) The court also noted that the "'stop lamp' provision . . . had never been previously construed by North Carolina's appellate courts. [Citation.] It was thus objectively reasonable for an officer" to think that Heien's faulty right brake light was a violation of North Carolina law. (*Heien*, *supra*, ___ U.S. at p. ___ [135 S.Ct. at p. 541].)

The situation before us is markedly different from the situation in *Heien.* Section 21956 has been construed by a California appellate court, in *People v. Cox, supra*, 168 Cal.App.4th 702. The meaning of the statute has been clear since that case was decided, in 2009. Further, as the court in *Cox* pointed out, even in 1943 "it was well-settled law that "'pedestrians have a right to travel anywhere upon a public highway in a residence district."' Going back still farther, our Supreme Court has held that this right of a pedestrian also extends to city streets." (*Id*. at p. 709 [citing *Raymond v. Hill* (1914) 168 Cal. 473, 482 in omitted fn.].) For these reasons, we conclude that Deputy Johnsen's mistake was not a reasonable one.[5]

_____

[5] We note that the court in *People v. Cox, supra*, 168 Cal.App.4th 702, held that the officers in that case "failed to comprehend the California Vehicle Code, something they are reasonably expected to know. (See *People v. McNeil* [(2002) *supra*,] 96 Cal.App.4th [1302,] 1309.) Section 21956, subdivision (a) was enacted over 40 years ago. [Citation.] This is more than enough time for any California police department to analyze and properly instruct its officers that pedestrians can legally walk in the roadway in a business or residential district." (*People v. Cox, supra,* 168 Cal.App.4th at pp. 710-711 [fn. omitted].)

c. Detention

Respondent contends that even if Deputy Johnsen was mistaken about the law, the deputy did not seize appellant and so appellant's subsequent consent to search was voluntary. The trial court impliedly found that a detention occurred. We also find that a detention occurred.

"A seizure of a person implicating the Fourth Amendment occurs '"when [a police] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."'" (*Florida v. Bostick* (1991) 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.) An officer must either 'intentionally appl[y] hands-on, physical restraint' or 'initiate a show of authority, to which the objectively reasonable innocent person would feel compelled to submit, and to which the suspect actually does submit for reasons solely attributable to the police show of authority.'" (*People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1367, italics omitted.)

A detention is a seizure of an individual which is strictly limited in duration, scope, and purpose, and which may be undertaken by the police if there is an articulable suspicion that a person has committed or is about to commit a crime. (*In re James D.* (1987) 43 Cal.3d. 903.)

"'Unlike a detention, a consensual encounter between a police officer and an individual does not implicate the Fourth Amendment. It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so' without having any 'articulable suspicion of criminal activity.'" (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) '[T]he crucial test is whether . . . the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."' (*Florida v. Bostick*, at p. 437, 111 S.Ct. 2382.) This test 'is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' (*California v. Hodari D.* (1991) 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690.)" (*In re J.G.* (2014) 228 Cal.App.4th 402, 409.)

8

"Examples of circumstances that might indicate a seizure, even when the person did not attempt to leave," include "use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554.)

Here, the two deputies pulled up behind appellant in their marked patrol car and "asked him—or told him to stop." Deputy Johnsen's partner "yelled" at appellant from the window of the patrol car. Deputy Johnsen did not remember what his partner yelled. Whatever he yelled caused appellant to stop. Appellant "stopped right where he was." The deputies then directed appellant to come to the patrol car. Appellant complied.

No reasonable person would feel free to continue on his way after a police officer yelled at him to stop, even if the yelled statement was phrased in the form of a question. It is hard to imagine a clearer example of a situation where "the use of language or tone of voice indicat[ed] that compliance with the officer's request might be compelled." (*U.S. v. Mendenhall, supra,* 446 U.S. at p. 554.) The deputies then directed appellant to come to their patrol car. This would only reinforce a reasonable person's belief that he was not free to continue on his way.

When appellant reached the patrol car, nothing the deputies said would have indicated to a reasonable person that he was free to decline to answer the officers' questions and continue on his way. The deputies did not ask appellant how he was feeling or if he was in any difficulty.[6] They did not ask appellant if he would speak with

---

[6] A detention is permissible if it is an exercise of an officer's community caretaking function. (See *People v. Madrid* (2008) 168 Cal.App.4th 1050, 1058 [community caretaking exception applies when police officers "'act[]reasonably to protect the safety and security of persons and property' [citation]"].) Here, the prosecutor did not attempt to justify the warrantless search of appellant by arguing that the initial stop was justified as an exercise of Deputy Johnson's community caretaking functions. The key factor in determining the reasonableness of a community caretaking detention is the "nature and level of distress exhibited" by the person stopped. (*Id*. at p. 1059.) Deputy Johnson's testimony contains no indication that appellant was exhibiting any level of distress at all, and nothing in Deputy Johnson's questioning of appellant concerned appellant's welfare.

them or would be willing to answer a few questions. They first asked appellant if he was on probation or parole, then asked other accusatory questions.

d. Taint from any illegal seizure

Respondent contends that even if appellant were illegally seized by the deputies, appellant's subsequent consent to search was voluntary.

It is often the case that when consent to a search is given immediately following an illegal detention, the consent is "inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People v. Haven* (1963) 59 Cal.2d 713, 719.) However, such consent is not automatically invalid. (*Wong Sun v. United States* (1963) 371 U.S. 471, 487-488.) "The question is whether the evidence was obtained by the government's exploitation of the illegality or whether the illegality has become attenuated so as to dissipate the taint." (*People v. Boyer* (2006) 38 Cal.4th 412, 448-449.)

The prosecution bears the burden of proof on issues on attenuation. (*People v. Boyer, supra*, 38 Cal.4th at p. 449.) Here, these issues were not litigated below. "[W]e may nonetheless resolve such issues on appeal, even if not explicitly litigated below, if their factual bases are fully set forth in the record. [Citations.]" (*Ibid*.) Since respondent urges us to decide these issues on appeal, we presume that the record is complete.

In determining whether the taint has been dissipated, courts should consider the "temporal proximity of the [illegal conduct and the discovery of the evidence,] the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct." (*Brown v. Illinois* (1975) 422 U.S. 590, 603-604.) Intervening circumstances can include fleeing the scene or resisting arrest. (*People v. Prendez* (1971) 15 Cal.App.3d 486, 487-488 [fleeing scene]; *People v. Cox, supra*, 168 Cal.App.4th at pp. 711-712 [resisting arrest].) In the case of a residence, the subsequent consent of another resident can be an intervening circumstance. (*People v. Boyer, supra*, 38 Cal.4th at pp. 449-452 [illegally detained defendant did not consent to search, but told police that it was up to his girlfriend; girlfriend, who had remained in the residence, consented to search several hours after defendant was taken to the police station and after she had the

10

opportunity to consult with an attorney; her consent was valid and not tainted by defendant's illegal detention].)

Here, appellant's consent to search was given in very close temporal proximity to the illegal detention. There were no intervening circumstances. Appellant did not flee from police, resist arrest or consult with an attorney.

Respondent contends appellant's decision to answer the officer's questions was an independent act of free will which constituted an intervening circumstance, like the defendant's volitional acts of resisting arrest and fleeing the scene in *People v. Cox, supra*, 168 Cal.App.4th 702 and *People v. Prendez, supra*, 15 Cal.App.3d 486. Respondent is mistaken.

The "'act in fleeing is analogous to the commission of an offense subsequent to the police conduct said to be illegal.'" (*People v. Cox*, 168 Cal.App.4th at p. 712, fn 10, quoting *People v. Prendez, supra*, 15 Cal.App.3d at p.489.) "Normally, in a case where evidence is uncovered following an illegal search, the search itself procures the evidence sought to be excluded. But it would be a curious use of language to say that officers' detention of defendant (illegal though it might have been) *procured* the officers' subsequent observations of his resistance to arrest. Unlike tangible evidence that is uncovered when police conduct an unlawful search, defendant's reaction here to being detained was not inevitable. . . ." (*Id*. at p. 712.)

Appellant's act of answering questions was not analogous to an illegal act. The officers' questions to appellant were designed to, and did procure answers. Appellant's decision to answer was not an intervening circumstance.

Respondent also contends appellant "volunteered information," which showed free will and independent action. Appellant did not volunteer information. He answered specific questions asked by the officers, and appears to have done so as tersely as possible, giving one or two word answers. Appellant's act of responding to the officer's questions shows that he was submitting to the officer's assertion of authority, not exercising independent free will.

The People have not shown that the taint from the illegal detention of appellant was attenuated by intervening events and have not shown that appellant's answers and consent to search were voluntary.  Thus, the search and seizure of appellant violated his Fourth Amendment rights.

e.  Remedy

Although the trial court believed there was a Fourth Amendment violation, the court believed that the officer was merely negligent in his interpretation of the statute. The court concluded that under the reasoning of *Herring, supra,* 555 U.S. 135, exclusion was not an appropriate remedy.[7]

As we discuss above, as long ago as 1943, "it was well-settled law [in California] that "'pedestrians have a right to travel anywhere upon a public highway in a residence district."'" (*People v. Cox, supra*, 168 Cal.App.4th at p. 709.)  The statute at issue here, section 21956, subdivision (a) was enacted in 1959.  (*People v. Cox, supra*, 168 Cal.App.4th at pp. 710-711.)  It did not represent a departure from existing law.  We agree with our colleagues in the Third District Court of Appeal that over forty years "is more than enough time for any California police department to analyze and properly instruct its officers that pedestrians can legally walk in the roadway in a business or residential district."  (*Id*. at p. 711; see also *People v. NcNeil, supra*, 96 Cal.App.4th at p. 1309 ["40 years was enough time for responsible officials of the Oakland Police

---

[7]     As the Supreme Court noted in *Heien*, in previous cases such as *Herring, supra,* 555 U.S. 135, and *Davis v. United States* (2011) 564 U.S. __ [131 S.Ct. 2419], "[a]ny consideration of the reasonableness of an officer's mistake was . . . limited to the separate matter of remedy." (*Heien*, *supra*, ___ U.S. at p. ___ [135 S.Ct. at p. 10].)  In *Heien*, however, the Supreme Court considered the reasonableness of an officer's mistake to determine whether the Fourth Amendment had been violated.  The court found the mistake of law in *Heien* reasonable, leaving open the question of whether an unreasonable mistake of law would in and of itself call for application of the exclusionary rule or whether a secondary analysis of police culpability would be required to determine the remedy.  We will make such an analysis.

Department to learn and to educate their officers in the field that the ordinance in question was preempted by state law"].)

Here, two deputies of the Los Angeles County Sheriff's Department apparently were not aware of long-standing California law permitting pedestrians to walk in the middle of the road in a residential district. This creates a strong inference that the Sheriff's Department has not properly trained its deputies in the relevant law. Since this law has been in existence in its current statutory form for more than fifty years, this failure is more than simple negligence, and is exactly the sort of situation where application of the exclusionary rule would have its intended deterrent effect. (See *Herring, supra*, 555 U.S. at p. 144 ["the exclusionary rule serves to deter . . . recurring or systemic negligence"].) The trial court erred in denying appellant's motion to suppress evidence.

### Disposition

The judgment is reversed and this matter is remanded to the trial court with directions to enter an order granting appellant's motion to suppress evidence.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GOODMAN, J.[*]

I concur:


MOSK, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Turner, P.J., Dissenting

I respectfully dissent. In terms of issues properly before us, substantial evidence supports the trial court's finding that the deputies acted in a negligent non-culpable manner. Vehicle Code[1] section 21956, subdivision (a) prohibits the following, "No pedestrian may walk upon any roadway outside of a business or residence district otherwise than close to his or her left-hand edge of the roadway." Putting aside the obtusely stated language in section 21956, subdivision (a), it prohibits walking in a street outside of a commercial or residential district. When walking outside of a business or residence district, a pedestrian is free to walk upon a roadway close to its left hand edge. And under specified circumstances, section 21956, subdivision (b) permits a pedestrian to walk "close" to the right-hand edge of the roadway.

There is substantial evidence defendant was first seen walking outside of a residential district. Deputy Jeffrey Johnsen first saw defendant walking southbound on Mountain. The deputies watched defendant "a minute or so" before they pulled him over. Deputy Johnsen saw defendant walking on Mountain, which has three lanes, between two double lines. Defendant turned and walked eastbound on Meridian. It was on Meridian where defendant was stopped. Deputy Johnsen testified, "We stopped him for the subsequent violation and were going to warn or cite him." Defendant was only stopped when he had turned from Mountain to Meridian. There was no testimony defendant walked in the middle of Meridian, only Mountain.

When cross-examined, Deputy Johnsen was asked whether the Mountain and Meridian intersection is a residential area. It is these questions on cross-examination that are directly pertinent to the nature of the area where defendant was walking in the middle of the street. Deputy Johnsen testified: "Mountain is a highway in between two residential areas. Meridian is in a residential area." After that answer, the following

---

[1]     Future statutory references are to the Vehicle Code.

occurred:  "Q.  So, basically, it's all residential houses; right?  People -- basically, there are no businesses, it's where people live?"  [¶]  A.  Yes, ma'am."

This testimony raises two issues.  To begin with, Deputy Johnsen expressly testified that the area on Mountain was "between" two residential areas.  Deputy Johnsen's answer distinguished between Mountain and Meridian.  Mountain was a highway between two residential areas.  By contrast, Meridian was a street in a residential area.  There is no evidence there are any businesses on Mountain which was between two residential areas.  Under those circumstances, defendant violated section 21956, subdivision (a)—he was walking outside a residential or business district in the middle of the street.  As the Court of Appeal has explained—if  one is walking "*inside a business or residential district,*" section 21956, subdivision (a) has not been violated.  (*People v. Cox* (2008) 168 Cal.App.4th 702, 708-709, original italics.)  Defendant was not walking near or partially on the left hand side of Mountain as permitted by section 21956, subdivision (a).  (*Myers v. King* (1969) 272 Cal.App.2d 571, 578-579.)  Nor was defendant walking near the right side of Mountain under the circumstances enumerated in section 21956, subdivision (b).  (See *Kovacs v. Sturgeon* (1969) 274 Cal.App.2d 478, 482; *Myers v. King*, *supra*, 272 Cal.App.2d at p. 578 & fn. 3.)  Under those circumstances, defendant could be stopped for violating section 21956, subdivision (a).  Any alleged *negligent* violation of defendant's Fourth Amendment rights is irrelevant under this view of the facts.

In any event, Deputy Johnsen's answer to defense counsel's inartful question, which begins, "Well basically. . ." can be read two ways.  To begin with, his answer can be read as clarifying that Meridian is in fact in a residential area.  If that is the case, the result is that specified in the immediately preceding paragraph.  Defendant was observed walking in a highway between two residential areas, a violation of section 21956, subdivision (a).  Another way to read the answer to the convoluted question is that Meridian is in close proximity to the highway where defendant was walking.  In other words, it can be argued that:  where defendant was walking in the middle of Mountain is very close to where he was stopped on Meridian; that the immediate proximity of the two

2

roadways meant that while walking on Mountain, one could arguably characterize the area as residential; and defendant thus did not violate section 21956, subdivision (a). This view of the testimony is one cloaked in ambiguity; but the two areas where defendant was observed, on Mountain and Meridian, is arguably residential.  (It bears emphasis though that Deputy Johnsen never directly testified that Mountain was in a residential area; only that it was *between* two residential areas.)  Given the ambiguity of the neighborhood's character, under this hypothesis, the two deputies acted negligently so as to bring this case outside the ambit of the exclusionary rule.

Such negligent, non-culpable, conduct prohibits application of the exclusionary rule.  (*Herring v. United States* (2009) 555 U.S. 135, 144; see *Davis v. United States* (2011) 564 U.S. __, __ [131 S.Ct. 2419, 2426-2429]; *United States v. Wright* (3rd Cir. 2015) 777 F.3d 635, 638.)  The Third Circuit has synthesized the controlling United States Supreme Court authority thusly:  "When law enforcement 'exhibit[s] "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."  *Id.* (quoting *Herring,* 555 U.S. at 144); *accord* [*United States v.*] *Katzin* [(3rd. Cir. 2104)] 769 F.3d [163,] 171.  Similarly, 'the exclusionary rule serves to deter . . . recurring or systemic negligence.'  *Herring,* 555 U.S. at 144.  'But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.'  *Davis,* 131 S.Ct. at 2427-28 (citations and internal quotation marks omitted); *Herring,* 555 U.S. at 137; *accord* [*United States v.*] *Leon*, [(1984)] 468 U.S. [897,] 919; *Katzin,* 769 F.3d at 171.  Indeed, the Supreme Court recently suggested that the absence of culpability is dispositive of the deterrence balancing test.  *See Davis,* 131 S.Ct. at 2428-29 ('[T]his acknowledged absence of police culpability dooms Davis's claim.')."  (*United States v. Franz* (3rd Cir. 2014) 772 F.3d 134, 145.)  Here the trial court observed Deputy Johnsen's demeanor and heard the opaque testimony as to the nature of Mountain where defendant was walking in the

middle of the highway. The trial court found the deputies acted merely negligently, not with any culpability.

I would affirm subject to modifications in the judgment.

TURNER, P.J.